Harold S. ALSTON, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Nov. 1, 1988.
Decided: Feb. 9, 1989.

John S. Malik (argued), Wilmington, for appellant.

Gary A. Myers (argued), Deputy Atty. Gen., and Eugene M. Hall, State Prosecutor, Loren C. Meyers, Deputy Atty. Gen., Dept. of Justice, Wilmington, for appellee.

Before MOORE, WALSH, and HOLLAND, JJ.

WALSH, Justice.

The defendant-appellant, Harold S. Alston ("Alston"), was convicted of seven counts of first degree robbery and nine counts of second degree conspiracy after a jury trial in the Superior Court. The robberies were committed at various locations in the city of Wilmington and New Castle County. On appeal Alston contends that the trial judge should have suppressed two

statements made by Alston to police. He also argues that the jury's verdict was internally inconsistent and legally flawed. Although we find that certain evidence was improperly admitted against Alston, we conclude that, under a harmless error analysis, all convictions, except one conspiracy charge, are sustainable. Accordingly, with the exception of one charge of conspiracy, all convictions are affirmed.

I

A series of robberies were committed in New Castle County and the city of Wilmington during the summer of 1985. On the basis of information provided by a confidential informant, the investigating officers believed that Alston was involved. A notebook belonging to a victim of one of the robberies was recovered at one crime scene, a Wilmington hotel. A fingerprint taken from the notebook matched that of Alston's right thumb. Police secured arrest warrants charging Alston with first degree robbery and second degree conspiracy. He was arrested on August 19, 1985, in North Carolina, waived extradition, and was returned to Delaware on August 23, 1985.

In Delaware, Alston was taken directly to a State Police station and there questioned by detectives of the Delaware State Police and the Wilmington Police Department. While in custody Alston was advised of his *Miranda* rights. He stated that he understood those rights and agreed to give a statement to the detectives. During the course of the interview, Alston was advised that the police were investigating several robberies and that he was under arrest for two robberies at a Wilmington hotel. Alston denied any involvement in the robberies. The interrogating officer then advised Alston about the fingerprint match. In response, Alston asked the officers about his possible sentence for the crimes that were being investigated. Alston was advised that if he gave a statement about all of the robberies that he was involved in, they would recommend to the Attorney General that he be allowed to plead to a single robbery charge.

After being advised of the possible plea arrangement, Alston admitted to participating in two robberies at the hotel, two other robberies, on separate dates, at a supermarket, a fifth robbery near an adult bookstore in New Castle County, a sixth robbery at an automatic teller machine, a seventh robbery at an adult book store in Wilmington, and an eighth robbery at a grocery store in Wilmington. After Alston gave his oral statement, he was taken before a Justice of the Peace for the setting of bond on the two hotel robberies and one conspiracy charge and committed to Gander Hill, a pretrial detention facility.

On August 26, while at Gander Hill, Alston signed a form indicating that he did not desire to talk to law enforcement officials, unless a Public Defender was present.[1] This form, executed according to a standard procedure followed by the Public Defender's Office at Gander Hill, is signed in triplicate. One copy is given to the accused, a second is retained in the public defender's file and a third copy is placed in a file for access by the warden at Gander Hill. According to testimony at the suppression hearing, when police wish to interview a detainee, the warden's office contacts the Public Defender's Office at Gander Hill, to determine if the detainee has executed a form invoking his right to counsel. If the prisoner wishes to speak to the police, notwithstanding his previous execution of the document, the warden's office requests the detainee to sign a separate form to that effect. There is no evidence that the latter form was ever signed by Alston.

1. The document, addressed to the Warden at Gander Hill, reads as follows:

"Dear Sir:

*I am* presently a detainee in this institution and I will not speak to any police officer, law enforcement officers, their agents or representatives from the Department of Justice, of any jurisdiction, without a Public Defender being present at such a meeting.

I further do not wish to be removed from my Pod and brought to a meeting with the above mentioned officers for the purpose of discussing a waiver of my constitutional rights in this regard."

On August 28, Alston was indicted on two counts of robbery and one count of conspiracy for the robberies committed at the hotel (Hotel Charges). The following day, Alston was transported by prison guards from Gander Hill to the Wilmington Police Department. The purpose of this appearance was two fold: to be processed on arrest warrants on new charges and to be interviewed again by State and Wilmington police officers.

Before the interview, Alston was advised of his *Miranda* rights and signed a Wilmington Department of Police form waiving his rights. Prior to questioning, the detectives again told Alston that if he was fully truthful about all of the robberies in which he was involved, the detectives would make a recommendation to the Attorney General's office to allow him to plead guilty to only one charge of first degree robbery. Alston then gave a "question and answer" taped statement in which he confessed to the eight robberies which he had mentioned during the August 23 interview. Alston also confessed to a ninth robbery which occurred on Market Street, but not until one of the detectives reminded him of the robbery. Because Alston delayed confessing to the ninth robbery, interviewing officers refused to recommend to the Attorney General's office the single robbery plea agreement.

On March 5, 1986, Alston was reindicted on nine counts of first degree robbery and nine counts of second degree conspiracy. The indictment included the Hotel Charges set forth in the initial indictment, another conspiracy charge for the hotel robberies, as well as seven new counts of robbery and conspiracy. A suppression hearing was held on September 10, 1986, to determine the admissibility of the two statements Alston had made to the police. At the suppression hearing Alston testified that he would not have confessed to any robberies in either interview, if the detectives had not promised to make a recommendation of leniency on his behalf. His counsel also sought to suppress the second statement on the ground that it had been secured in violation of his right to counsel. Both motions were denied by the trial judge. At

trial, Alston was found guilty of seven counts of first degree robbery and nine counts of second degree conspiracy.

## II

The first issue for our consideration is whether Alston's two statements were involuntary, because they were given in exchange for a promise to recommend leniency. Alston claims that his statements to the police were involuntary because the promise to recommend a lenient plea agreement, was the motivating factor behind his confession. Alston relies on the holding in *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), which held that a confession cannot be procured by any direct or implied promises, nor by the exertion of improper influence. *See Malloy v. Hogan,* 378 U.S. 1, 6–7, 84 S.Ct. 1489, 1492–1493, 12 L.Ed.2d 653 (1964).

■ Voluntariness of a confession is determined from the "totality of the circumstances" surrounding the confession. *Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961); *Blankenship v. State,* Del.Supr., 447 A.2d 428, 431–432 (1982); *State v. Rooks,* Del.Supr., 401 A.2d 943, 948–49 (1979). All relevant factors pertaining to the confession must be examined. Alston's argument rests heavily on the fact that the police officers made a promise to him which he claims induced his confession. "Promises or inducements ...do not make a statement involuntary, unless so extravagant, or so impressionable as to overbear the person's will and rational thinking processes." *State v. Rooks,* 401 A.2d at 948.

Alston was 28 years old at the time of his arrest and had previously been convicted of three felonies. Alston had completed the tenth grade and was able to read and write. At the time his statements were made he was alert and did not appear to be under the influence of alcohol or drugs. The interviews were during the day, and each interview lasted approximately one to one and one-half hours. Although in custody, Alston was not handcuffed during either session. Further, he had been advised of

his *Miranda* rights before each interview and had waived them on both occasions.

■ We review the trial court's refusal to grant a motion to suppress, after an evidentiary hearing, under an abuse of discretion standard. So viewed, we conclude that the admissibility of both statements as voluntary is amply supported by the evidence. We agree with the trial judge that the officers' promise to make a recommendation to the Attorney General did not rise to a level that overbore Alston's thinking process. Alston was clearly advised that the officer's role was one of recommendation, depending upon the extent of his cooperation. The promise was a factor, but only one of the factors, which motivated the statements. Other factors, in particular, the fingerprint evidence linking him to the hotel charges, undoubtedly influenced the defendant in his decision to cooperate. Under a totality of circumstances test we cannot conclude that his cooperation was solely, or dominantly, the product of a promise of leniency. Finding no abuse of discretion, we affirm the Superior Court on this issue.

### III

We next address a more formidable question: whether Alston's second statement was secured in violation of his Fifth and Sixth Amendment rights to counsel. Alston argues that his execution of a document indicating his desire not to speak to law enforcement authorities unless counsel was present, coupled with his post-indictment status, precluded State-initiated interrogation on August 29. The State concedes that it was error for the trial judge to have admitted that portion of the August 29 statement involving the hotel charges for which Alston had been indicted the previous day, but contends that such error was harmless. The balance of the August 29 statement is claimed to be admissible because the interrogating officers were unaware of Alston's request for the assistance of counsel.

### A

■ The Sixth Amendment provides: "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment right to counsel applies to the states through the Fourteenth Amendment. *See Gideon v. Wainwright,* 372 U.S. 335, 342–3, 83 S.Ct. 792, 795–6, 9 L.Ed.2d 799 (1963). A defendant's right to counsel attaches when adversarial judicial proceedings have been initiated against him. *See Kirby v. Illinois,* 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972); *Deputy v. State,* Del.Supr., 500 A.2d 581, 589, 590 (1985) *cert. denied,* 480 U.S. 940, 107 S.Ct. 1589, 94 L.Ed.2d 778 (1987). The assistance of counsel is required at the initial stage of the criminal justice process. *Kirby* 406 U.S. at 689, 92 S.Ct. at 1882. The right to counsel applies whether proceedings are commenced by way of a formal charge, preliminary hearing, indictment, information, or arraignment. *Id.* Post-indictment interrogations are also included within the scope of Sixth Amendment Protection. *Massiah v. United States,* 377 U.S. 201, 206, 84 S.Ct. 1199, 1203, 12 L.Ed. 2d 246 (1964).

■ The State concedes that upon Alston's indictment on August 28, on the Hotel Charges, Alston's Sixth Amendment right to counsel attached. *Patterson v. Illinois,* — U.S. ——, 108 S.Ct. 2389, 2393, 101 L.Ed.2d 261 (1988); *Massiah v. United States,* 377 U.S. at 206, 84 S.Ct. at 1203; *Lovett v. State,* Del.Supr., 516 A.2d 455, 462 (1986), *cert. denied,* 481 U.S. 1018, 107 S.Ct. 1898, 95 L.Ed.2d 504 (1987). The State also acknowledges that under this Court's articulation of the standards by which an accused's waiver of Sixth Amendment rights are adjudged, Alston did not validly waive those rights on August 29, as to the Hotel Charges.

The State argues, however, that the error in admitting the Hotel Charges portion of the August 29 statement is subject to a harmless error analysis pursuant to *Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705 (1967).

"Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828.

At trial, the State introduced fingerprint evidence from a notebook recovered from the scene of the hotel robberies which matched Alston's right thumb print. Moreover, the two victims identified Alston at trial as the person who robbed them. Assuming without deciding, that Alston's statement was taken in violation of his Sixth Amendment rights, we hold that the admission of the August 29 statement, with respect to the Hotel Charges was harmless beyond a reasonable doubt, given Alston's earlier statement, the unambiguous fingerprint evidence and the in-court identification of Alston by the two victims. *See Milton v. Wainwright,* 407 U.S. 371, 372–73, 92 S.Ct. 2174, 2175–76, 33 L.Ed.2d 1 (1972), *Deputy v. State,* 500 A.2d at 592.

**B**

As to the remaining robbery and related conspiracy charges, the State argues that since at the time of questioning on August 29, Alston had not been formally charged, the police, consistent with the Sixth Amendment, could question Alston about these other charges. *Maine v. Moulton,* 474 U.S. 159, 106 S.Ct. 477, 490, n. 16, 88 L.Ed.2d 481 (1985).

 Alston claims, to the contrary, that his Sixth Amendment right to counsel had attached to all nine robberies, and related conspiracy charges which he had discussed with police, because one of the reasons he was taken to the Court House on August 29, was to be processed for the additional robberies. Alston does not assert, nor is there any evidence, that he was processed before he was questioned on August 29. A violation of a defendant's Sixth Amendment right to counsel does not blanketly preclude the admissibility of all information thereafter given. *Maine v. Moulton,* 106 S.Ct. at 489. Therefore, we view Alston's Sixth Amendment right to counsel as not having attached regarding any charges except the Hotel Charges, and that

his entitlement to counsel must subsist within the Fifth Amendment claim.

If, in fact, Alston had effectively invoked his Fifth Amendment right to counsel, his second statement to police would be rendered inadmissible. *See Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). *See also Arizona v. Roberson,* —— U.S. ——, 108 S.Ct. 2093, 2096, 100 L.Ed.2d 704 (1988). *Edwards* teaches that a suspect who has "expressed his desire to deal with police only through counsel is not subject to further interrogation by the authorities until counsel has been made available to him unless the accused himself initiates further communication." *Edwards v. Arizona,* 451 U.S. at 484–485, 101 S.Ct. at 1884–1885. The State does not argue that Alston in any way initiated the August 29 interview.

Alston claims that the form he executed, during his public defender intake interview on August 26, should be considered an invocation of his right to counsel which bars any subsequent statements he himself did not initiate. The State argues that Alston may have attempted to invoke his right to counsel, but that, as a matter of law, his invocation was insufficient because it was never brought to the attention of law enforcement personnel.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, *reh'g denied, California v. Stewart,* 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966), the Supreme Court originally outlined the procedures for law enforcement agencies to follow in order to safeguard an individual's privilege against self-incrimination under the Fifth Amendment. "If ...[the defendant] indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Id.,* 384 U.S. at 444, 86 S.Ct. at 1612. *See Edwards v. Arizona,* 451 U.S. at 484–485, 101 S.Ct. at 1884–1885 (discussing requirement that accused "express[ ] his desire" for or "clearly assert[ ]" his right to counsel).

 A person suspected of a crime can invoke or express the right to counsel

**310**

in numerous ways. *See Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 1410, 89 L.Ed.2d 631 (1986) (right asserted at arraignment); *Smith v. Illinois,* 469 U.S. 91, 97, 105 S.Ct. 490, 493, 83 L.Ed.2d 488 (1984); *Edwards v. Arizona,* 451 U.S. at 479, 101 S.Ct. at 1882 (right asserted to an interrogating officer); *Brewer v. Williams,* 430 U.S. 387, 391, 97 S.Ct. 1232, 1235, 51 L.Ed.2d 424 (1977) (right asserted through counsel to police officer); *United States v. Porter,* 764 F.2d 1 (1st Cir.1985), *cert. denied,* 481 U.S. 1048, 107 S.Ct. 2178, 95 L.Ed.2d 835 (1987) (right asserted by attempting to contact attorney in presence of one DEA agent, knowledge of assertion imputed to DEA supervisor). But the assertion of the right to counsel must be conveyed to someone, usually an agent of the State, who would otherwise seek to question the suspect in the adversarial or investigative process. Typically a defendant asserts such a right to the interrogating police officer. *See Edwards v. Arizona,* 451 U.S. at 479, 101 S.Ct. at 1882. A defendant, however, may also invoke his right at arraignment, in which case the knowledge of a defendant's request may be imputed from one state actor to another. *See Michigan v. Jackson,* 106 S.Ct. at 1410. ("One set of state actors (the police) may not claim ignorance of defendant's unequivocal request for counsel to another state actor (the court).")

■ This case requires that we determine whether Alston effectively invoked his right to counsel. A file containing the form, indicating that Alston did not want to speak to police officers, was kept in the Public Defender's Office to be available to the warden, if the warden sought the information. Under the facts of this case, there is no suggestion that the warden or his agents ever had possession of the form. In fact, all copies of the form were in the possession of Alston and the Public Defender's Office at the prison. Thus, there is no basis on which to impute to the warden knowledge of Alston's *pro forma* invocation of his right to counsel. Because the warden had no knowledge of Alston's alleged invocation of his right to counsel, it is not necessary to consider whether the

warden might be considered a State actor to whom a defendant's assertion of the right to the assistance of counsel might be communicated, or whose knowledge of such invocation, by a defendant, could be imputed to an investigating officer.

Even though it appears that Alston attempted to interdict further communication with the police by executing the invocation of counsel form, its mere availability to a custodial officer, under the circumstances here present, does not constitute notice to those state agents charged with further investigation. Moreover, the same officers who interrogated Alston on August 23 at the State Police station, conducted the interview at the Wilmington Police Department on August 29. On the later date, Alston did not assert his right to counsel in any manner, including showing to the officers his copy of the signed form, or advising them that he had executed such a form.

Alston argues, with reliance upon *Arizona v. Roberson,* that in determining whether a defendant has invoked his right to counsel the focus is upon "the state of mind of the suspect, not the police." 108 S.Ct. at 2101. In *Roberson,* however, the suspect's invocation of his right to counsel had not only been communicated to the initial interrogating officer but memorialized in a written report which was available to the officer conducting the second interrogation. The Court in *Roberson* refused to recognize ignorance which resulted from "the lack of diligence of a particular officer." *Id.* at 2101. Here, there is no evidence that the investigative records contained any reference to Alston's invocation of the right to counsel. We decline to view, as "constructively known" to the police, records which are merely accessible to other state agents who function at the custodial level. Such a view places too heavy a burden on the police who acted in this case in good faith and without notice, actual or constructive, of Alston's *pro forma* claim to the assistance of counsel. We conclude, therefore, that, under the circumstances underlying Alston's Fifth Amendment claim to the assistance of counsel that his assertion was incomplete and unavailing.

## C

Having concluded that Alston did not clearly assert his right to counsel, thus not triggering the *Edwards* standard, we next address the question of whether Alston validly waived his right to counsel at the August 29 interrogation. *See Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. at 1612.

Alston claims that, the form aside, questioning him without counsel present violated the Fifth Amendment because he did not validly waive his right to have counsel present during the interview. Alston contends that the *Miranda* warnings given to him prior to the August 29 questioning were insufficient to protect him from the pressures of custodial interrogation. Under *Miranda* "[t]he defendant may waive effectuation" of the rights conveyed in the warnings provided the waiver is made voluntarily, knowingly and intelligently. *Id.* The waiver inquiry explores two aspects of the defendant's state of mind, one volitional, the other cognitive. *Edwards v. Arizona*, 451 U.S. at 482, 101 S.Ct. at 1883.

We have held that under the totality of the circumstances Alston's August 29 statement was voluntarily given. *Ante* at 307–08. The same standard is applied when making a "voluntariness" inquiry in the *Miranda* waiver context. *See Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 523, 93 L.Ed.2d 473 (1986). We have found that under the totality of the circumstances the officers' promise to make a recommendation to the Attorney General did not overbear Alston's thinking process and make his statement involuntary. We further conclude that under a totality of the circumstances inquiry there are no additional factors indicating that Alston's waiver was involuntary. Therefore, we hold that Alston's decision to provide his second statement without the presence of counsel was voluntary.

With respect to the cognitive element, it must be shown that the waiver is knowing and intelligent. *Edwards v. Arizona*, 451 U.S. at 482, 101 S.Ct. at 1883.

After *Miranda* warnings were given to Alston he executed a written waiver of his right to counsel, and freely answered questions without claiming his right to silence or his right to have a lawyer present. The officers had made it clear to Alston that the questioning was to secure his conviction. Alston's "background, experience, and conduct strongly suggest he fully comprehended his right to counsel." *Cf. Lovett v. State*, 516 A.2d at 463, (Applying Sixth Amendment standard to waiver).

The typewritten waiver form supplied by the Wilmington Police Department and signed by Alston, and the testimony of the interrogating officers indicate that he was fully aware of his right to counsel and his right to stop the interrogation at anytime if he wished to consult an attorney. Alston never availed himself of this clearly understood right. "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times could stand mute and request a lawyer and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." *Moran v. Burbine*, 475 U.S. 412, 422–23, 106 S.Ct. 1135, 1141–42, 89 L.Ed.2d 410 (1986). There is ample evidence in the record indicating that Alston affirmatively relinquished his Fifth Amendment right to counsel and that the admission into evidence of the August 29 statement was justified under constitutional norms.

## IV

Alston's next claim is that the jury's verdicts of guilty as to two of the conspiracy charges are inconsistent with his acquittal of the corresponding charges of robbery in the first degree. Alston argues that because the robberies were the "overt acts" alleged to have been committed as part of the conspiracies, he cannot be found guilty of the conspiracies because a necessary element of each crime had been negated by his acquittal on the rob-

bery charges.[2]

Alston relies on *Johnson v. State,* Del. Supr., 409 A.2d 1043 (1979). In *Johnson* this Court reversed a conspiracy conviction where the defendant had been acquitted of the "overt act" burglary charge on the ground that acquittal of the substantive offense precluded proof beyond a reasonable doubt of a necessary element of conspiracy. It was noted that there was no allegation that the overt act had been committed by a co-defendant. This Court later faced the same issue in *Stewart v. State,* Del.Supr., 437 A.2d 153 (1981). In *Stewart,* as here, the overt act was alleged to have been committed by the defendant and a co-conspirator. We there held that the conspiracy conviction was not legally inconsistent with an acquittal because under Delaware law a conviction is sustainable when the "[defendant] or another person with whom he conspired commits an overt act in pursuance of the conspiracy." 11 *Del.C.* § 512(2); *Stewart v. State,* 437 A.2d at 156–57. At trial the State presented evidence showing that Alston's co-conspirators had committed the robberies, constituting the overt act. Since Alston's acquittal of the two robbery charges does not, as a matter of law, preclude conviction of the conspiracy charges the jury's verdict is not inconsistent.

## V

▬▬▬ Alston's final claim is that he was erroneously convicted of two counts of conspiracy regarding the hotel robberies because the evidence established only one agreement to commit two robberies. The State concedes that result to be plain error as contrary to 11 *Del.C.* § 521(a).[3] Under section 521(a), if an individual conspires to commit several crimes, he is nonetheless guilty of only one conspiracy as long as the multiple crimes are the object of the same agreement. *See Braverman v. United States,* 317 U.S. 49, 53–54, 63 S.Ct. 99, 101–102, 87 L.Ed. 23 (1942). Alston was charged with two counts of first degree robbery based on the two robberies at the hotel and with two corresponding counts of second degree conspiracy. Alston claims, and the State concedes, that the evidence shows only one agreement, *viz.,* to rob whoever left the hotel that night. We agree that the multiple robbery offenses were the object of one agreement and thus may support only one conspiracy conviction.

## VI

In sum, we affirm the Superior Court's ruling on the admissibility of Alston's confessions and affirm his conviction on seven counts of first degree robbery and eight counts of second degree conspiracy. We reverse and vacate one second degree conspiracy conviction regarding the hotel robberies.

▬▬▬▬

---

2. 11 *Del.C.* § 512 provides:

 "A person is guilty of conspiracy in the second degree when, intending to promote or facilitate the commission of a felony, he:
 (1) Agrees with another person or persons that they or 1 or more of them will engage in conduct constituting the felony or an attempt or solicitation to commit the felony; or
 (2) Agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony; and he or another person with whom

he conspired commits an overt act in pursuance of the conspiracy."

3. 11 *Del.C.* § 521 provides in pertinent part:

 (a) If a person conspires to commit a number of crimes, he is guilty of only 1 conspiracy, so long as the multiple crimes are the object of the same agreement of continuous conspiratorial relationship. He may be convicted of the degree of conspiracy which includes the most serious offense which he is found guilty of conspiring to commit.