**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**JEROME TURNBULL, Defendant**

Case No. SX-11-CR-832

Superior Court of the Virgin Islands

Division of St. Croix

September 4, 2014

MAURICE NWIKPO-OPPONG, ESQ., Virgin Islands Department of Justice, Christiansted, St. Croix, USVI, *Attorney for the People*.

MARK MILLIGAN, ESQ., Mark L. Milligan, P.C., Christiansted, St. Croix, USVI, *Attorney for Defendant*.

MALLOY, *Judge*

## MEMORANDUM OPINION

(September 4, 2014)

**THIS MATTER** comes before the Court on the People's Second Motion to Compel Saliva Specimens filed on March 18, 2013. A hearing was held on August 1, 2014, when the parties placed their arguments on the record. For the reasons stated below, the Court will construe the People of the Virgin Islands' (the "People") motion to compel as an application for a search warrant and will deny the request without prejudice.

## I. FACTUAL & PROCEDURAL BACKGROUND

On November 28, 2011, law enforcement officers from the Virgin Islands Police Department ("VIPD") stopped a vehicle driven by Defendant Jerome Turnbull ("Turnbull") for a traffic violation. During the traffic stop, the officers discovered a black Military Armament Corporation Model 11 ("MAC-11") semi-automatic firearm with a magazine clip containing multiple rounds of ammunition in the vehicle. Turnbull was arrested, and on December 12, 2011, the People filed an Information charging Turnbull with the following offenses: (1) unauthorized possession of a firearm in violation of 14 V.I.C. § 2253(a); (2) unauthorized possession of ammunition in violation of 14 V.I.C. § 2256(a); (3) possession of stolen property in violation of 14 V.I.C. § 2101(a); (4) failure to report a firearm in violation of 23 V.I.C. § 470(a); and (5) speeding in violation of 20 V.I.C. § 494(a).

On February 13, 2012, the People filed a Motion to Compel Saliva Specimens requesting the Court compel Turnbull "to make himself

available, to give saliva (buccal swab) samples for the purpose of a DNA comparison with any DNA evidence previously swabbed from the [firearm] on November 28, 2011, collected as evidence in the above matter." Mot. to Compel Saliva Specimens dated Feb. 9, 2012 at 1. On January 23, 2013, the Court denied the People's motion reasoning that rather than file a motion to compel, the People should have applied for a search warrant under Federal Rule of Criminal Procedure 41. Though the Court could construe the motion to compel as a request for a search warrant, the People's motion failed to meet the underlying procedural requirements of a warrant request. Specifically, the People failed to include an affidavit establishing probable cause to support the warrant. The Court noted that, "[i]f the People want to request Defendant's saliva samples, it may do so pursuant to the procedure of a search warrant." Order dated Jan. 23, 2013 at 3.

On March 18, 2013, the People filed a Second Motion to Compel Saliva Specimens wherein the People sought to compel Turnbull to "make himself available, to give saliva samples via a buccal swabbing." People's Second Mot. to Compel Saliva Specimens dated March 18, 2013 at 1. The People contend that "[t]he purpose of the buccal swab would be to compare to a swabbing already taken from the firearm recovered on November 28, 2011 from the vehicle being driven by Defendant Jerome Turnbull, for which the Defendant has been charged." *Id.* The motion was accompanied by the affidavit of Detective Naomi Joseph. The affidavit requests "that a warrant be issued for Jerome Turnbull to compel him to submit a saliva sample to be compared and analyzed with DNA evidence collected on the Military Armament Corporation Model 11 semi-automatic pistol (Mac 11) recovered from his girl (sic) vehicle." Joseph Aff. at 6.

Defendant filed an opposition to the motion on July 18, 2014. Defendant argues that the motion should be denied because the People failed to apply for a search warrant to obtain the saliva sample in violation of the Fourth Amendment. *See* Def.'s Opp'n at 1. Defendant further argues that, even if the Court treats the People's motion as a warrant application, Detective Joseph's affidavit fails to establish the requisite probable cause because: (1) the information in the February 28, 2013 affidavit is stale; (2) the affidavit fails to establish that Turnbull had actual or constructive possession of the firearm; and (3) the affidavit fails to

indicate whether any DNA swabs have actually been recovered from the firearm. *Id.* at 4.

## II. LEGAL STANDARD

■ The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures and requires that warrants issue only upon probable cause." U.S. CONST. amend. IV.[1] "It is well-established law that the Fourth Amendment is implicated when a search involves an intrusion into the human body." *United States v. Flanders*, 2010 U.S. Dist. LEXIS 96752, *6 (D.V.I. Sept 15, 2010). Swabbing inside the mouth for saliva constitutes a search and is governed by the reasonableness standard of the Fourth Amendment. *Maryland v. King*, 133 S. Ct 1958, 1968-69, 186 L. Ed. 2d 1 (2013); *see also People of the Virgin Islands v. Hardcastle*, 55 V.I. 93 (V.I. Super. Ct. 2011); *Padgett v. Donald*, 401 F.3d 1273 (11th Cir. 2005); *Schlichler v. NFN Peters, I & I*, 103 F.3d 940 (10th Cir. 1996); *Flanders*, 2010 U.S. Dist. LEXIS 96752 at *6; *United States v. Allen*, 337 F. Supp. 1041 (E.D. Pa. 1972). Absent special circumstances, the "proper and lawful procedure" for establishing the government's right to saliva samples is by applying for a search warrant. *See Allen*, 337 F. Supp. at 1043 (holding that to compel defendant to produce blood and hair samples as well as x-rays the government needed to obtain a search warrant). Thus, in keeping in line with the reasonableness requirements of the Fourth Amendment, "[i]t follows . . . that before seeking saliva specimens from a defendant . . . the People must first apply for a search warrant . . . ." *Hardcastle*, 55 V.I. at 97.

■■ Under Virgin Islands law, the procedures for obtaining a search warrant are governed by Rule 41 of the Federal Rules of Criminal Procedure. *See* 5 V.I.C. § 3901(b) (providing that "Rule 41 of the Federal Rules of Criminal Procedure shall apply to proceedings [for obtaining a search warrant]"). Rule 41 authorizes the Court to issue a search warrant "if there is probable cause to search for and seize a person or property . . . ." FED. R. CRIM. P. 41(d). "Probable cause exists when, under the totality of the circumstances, a reasonable person would believe there is a fair probability that contraband or evidence of a crime will be found in a

---

[1] "The Fourth Amendment is made applicable to the Virgin Islands through Section 3 of the Revised Organic Act of 1954." *People of the Virgin Islands v. John*, 52 V.I. 247, 255 (V.I. 2009).

particular place." *Browne v. People of the Virgin Islands*, 56 V.I. 207, 217 (V.I. 2012) (citing *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000)). With respect to the specific search in this case, "the issuance of a search warrant for DNA is only proper where the affidavit supporting the application provides a basis for believing that the individual's DNA can link the individual to a criminal act." *Flanders*, 2010 U.S. Dist. LEXIS 96752 at *9.

## III. DISCUSSION

### A. The Court Will Construe the Motion to Compel and the Supporting Affidavit as an Application for a Search Warrant.

■■ As noted by Defendant in his opposition, the People have not filed an application for a search warrant. Defendant, therefore, argues that the People's failure to file an application for a search warrant is fatal to the People's motion. However, in addition to filing a motion to compel saliva specimens, the People attached an affidavit signed by Detective Naomi Joseph given under oath. It is undisputed that "the circumstances establishing probable cause must appear in the affidavit supporting the warrant." *People of the Virgin Islands v. John*, 52 V.I. 247, 256 (V.I. 2009). Accordingly, because "[a]ll data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath," *United States ˜v. Anderson*, 453 F.2d 174, 175 (9th Cir. 1971), the Court will construe the People's motion to compel and the attached affidavit of Detective Joseph as an application for a search warrant under Rule 41 to determine whether a search warrant should be issued in this case. *See Island Tile and Marble, LLC v. Bertrand*, 57 V.I. 596, 611 (V.I. 2012) (stating that "the substance of a motion, and not its caption, shall determine under which rule that motion is construed.") (quoting *Joseph v. Bureau of Corr.*, 54 V.I. 644, 648 n.2 (V.I. 2011)).

### B. Detective Joseph's Affidavit Fails to Establish Probable Cause for a Search Warrant.

As mentioned above, law enforcement officers discovered a MAC-11 semi-automatic firearm in a vehicle being driven by Turnbull. *See also*, Joseph Aff. ¶ b, d, and j (Feb. 28, 2013). After performing an NCIC check, the police also discovered that the firearm was one of eleven firearms

stolen from a federally licensed dealer on October 25, 2011, in Newman, Georgia. *Id.* ¶ l. Detective Joseph also stated that her investigation revealed Turnbull does not have a license to possess a firearm and that Turnbull is a convicted felon on parole and is prohibited from possessing a firearm. *Id.* ¶ m. Detective Joseph further stated "if DNA is collected [from] Jerome Turnbull it will be compared to any DNA that *may* be on the Military Armament Corporation Model 11 semi-automatic pistol (Mac 11) recovered from the vehicle that was being operated by him." *Id.* ¶ u. (emphasis added). Detective Joseph concludes her affidavit by requesting that a warrant issue to compel Turnbull "to submit a saliva sample to be compared and analyzed with DNA evidence collected on the [MAC-11]." *Id.* at 6.

The Court finds that Detective Joseph's affidavit establishes probable cause to believe the following: (1) Turnbull was in possession of a firearm;[2] (2) Turnbull does not possess a license to carry a firearm; (3) Turnbull could not legally possess a firearm; and (4) the firearm in Turnbull's possession was stolen from a federally licensed dealer in Newman, Georgia. That is, Detective Joseph's affidavit establishes sufficient probable cause for an arrest warrant. For a search warrant, however, the affidavit must show that there is "a fair probability that evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238-9, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). In this instance, there must be a fair probability the buccal swabbing will link Turnbull to the firearm and possession of stolen property charges.

The People's motion to compel indicates that "[t]he purpose of the buccal swab would be to compare to a swabbing already taken from the firearm recovered on November 28, 2011 from the vehicle being driven by Defendant Jerome Turnbull." People's Second Mot. to Compel Saliva Specimens dated Mar. 18, 2013, at 1. However, this Court is constrained to the four corners of Detective Joseph's affidavit in determining whether probable cause exists. According to Detective Joseph, the buccal sample "will be compared to any DNA that *may* be on [the firearm]." Joseph Aff. at ¶ u. (emphasis added). Significantly,

---

[2] Pursuant to 14 V.I.C. § 2253(d)(4), the term "possession" can mean both actual and constructive possession. "Constructive possession" means having the power and the intention at any given time to exercise dominion or actual control over the firearm either directly or through another person. 14 V.I.C. § 2253(d)(5).

Detective Joseph's affidavit does not indicate that a comparison DNA sample has been recovered from the MAC-11.[3] Performing a buccal swab procedure has no probability of linking Turnbull to criminal activity unless a comparison DNA sample actually exists on the firearm. "The interests in human dignity and privacy which the Fourth Amendment protects forbid [searches invading the human body] on the *mere chance that desired evidence might be obtained*." *Schmerber v. California*, 384 U.S. 757, 769-770, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966) (emphasis added). Here, a comparison sample of DNA found on the MAC-11 firearm may very well exist. However, absent evidence of such a sample in Detective Joseph's supporting affidavit, this Court does not find probable cause exists that evidence of criminal activity may be discovered by compelling Turnbull to submit to buccal swabbing.[4] Accordingly, this

---

[3] Courts in the Virgin Islands have taken different positions as to whether probable cause requires the known existence of a comparison DNA sample to authorize buccal swabbing. In *People of the Virgin Islands v. Carty*, the People requested blood, saliva, and hair samples from several co-defendants "so that Defendants' DNA may be compared with any DNA that may be found on the handgun." *People of the Virgin Islands v. Carty*, 2010 V.I. LEXIS 59, *10 (V.I. Super. Ct Aug. 17, 2010). The Superior Court found probable cause because there was "a reasonable probability that the handgun may have the DNA of at least one Defendant on it" *Id.* On the other hand, in *United States v. Flanders*, the District Court of the Virgin Islands vacated a magistrate's order to provide saliva samples, because, among other reasons, the People failed to provide a basis for believing that the defendant's DNA could link him to a criminal act as there was no indication that DNA samples had been recovered from items seized as evidence. *Flanders*, 2010 U.S. Dist. LEXIS 96752 at *10. As explained in this Opinion, this Court finds that the People must obtain a comparison DNA sample prior to the issuance of a search warrant.

[4] Turnbull also argued, in a conclusory fashion, that the People's motion to compel should be denied because the Detective Joseph's February 28, 2013 affidavit is stale. While the affidavit was signed and sworn to approximately fifteen (15) months after the officers discovered the firearm on November 28, 2011, the Court disagrees that the information contained in the affidavit is stale. "Although the '[a]ge of the information supporting a warrant application is a factor in determining probable cause . . . [a]ge alone . . . does not determine staleness.' " *United States v. Yusuf*, 461 F.3d 374, 391, 48 V.I. 980 (3d Cir. 2006) (quoting *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993)). "The determination of probable cause is not merely an exercise in counting days or even months between the facts relied on and the issuance of the warrant" *United States v. Williams*, 897 F.2d 1034, 1039 (10th Cir. 1990). The Court "must also examine the nature of the crime and the type of evidence." *Harvey*, 2 F.3d at 1322. "Information offered to support a search warrant application becomes stale when enough time has elapsed such that there is no longer 'sufficient basis to believe . . . that the items to be seized are still on the premises.' " *United States v. Grant*, 682 F.3d 827, 835 (9th Cir. 2012) (quoting *United States v. Lacy*, 119 F.3d 742, 749 (9th Cir. 1997)). To properly defend a challenge to staleness, the affidavit supporting the search warrant must

Court finds, as other courts have found, that "absent law enforcement's recovery of [a] comparison sample of DNA, a buccal swab search warrant is unsupported by probable cause." *United States v. Myers*, 2014 U.S. Dist. LEXIS 94449, \*27 (D. Minn. June 24, 2014); *see also United States v. Marshall*, 2012 U.S. Dist. LEXIS 101300, \*7-8 (W.D.N.Y. July 20, 2012) (opining that, because DNA recovered from firearm was not of sufficient quality to be used for comparison purposes, the government failed to meet its burden to compel DNA samples from defendants even under a reasonable suspicion standard); *Cf. People v. Treece*, 159 Ill. App. 3d 397, 511 N.E.2d 1361, 1367-68 (1987) (finding probable cause to obtain DNA sample from defendant accused of sex crime when comparison samples of hairs and spermatozoa were discovered at scene).

### C. The United States Supreme Court's Decision in Maryland v. King is not Applicable to the Facts of This Case.

During the August 1, 2014 hearing, the People argued that, under the United States Supreme Court's decision in *Maryland v. King*, 133 S. Ct. 1958, 186 L. Ed. 2d 1 (2013), a warrant is not required to compel Turnbull to provide a saliva specimen. According to the People, *King* established that if there is probable cause to arrest an individual then there is probable cause to search and compel a defendant to provide saliva samples.

In *King*, the defendant, Alonzo King, was arrested in Maryland in 2009, and charged with first and second-degree assault. *King*, 133 S. Ct. at 1965. As required by a state statute, a buccal swab was taken pursuant to a routine booking procedure for serious offenses. *Id.* at 1966. After King's DNA profile was uploaded to the state's DNA database, it was

---

state facts establishing "that the property to be seized was known to be at the place to be searched so recently as to justify the belief that the property is still there at the time of the issuance of the search warrant" *Grant*, 682 F.3d at 835 (quoting *Durham v. United States*, 403 F.2d 190, 194 (9th Cir. 1968)).

The Court has little trouble concluding that the information contained in Detective Joseph's affidavit is not stale. The People are requesting that Turnbull provide saliva samples to compare with DNA on the firearm found in the vehicle. The saliva specimens would be obtained through buccal swabbing. Obviously, the source of Turnbull's saliva specimens is, and will always be, in the same location regardless of the passage of time. Thus, the Court holds that the 15-month delay between the date law enforcement officers discovered the firearm and the date of the affidavit does not render the contents of the information in the affidavit stale as it relates to this case.

matched to DNA collected in an unsolved 2003 rape case. *Id*. Detectives then obtained a search warrant to collect a second DNA sample from King which also matched the DNA sample from the rape case. *Id*. King tried, and failed, to suppress the forensic DNA evidence arguing that the Maryland DNA Collection Act, which authorized the initial buccal swab at the time of booking, violated the Fourth Amendment. *Id*. King was ultimately convicted and sentenced to life in prison without the possibility of parole. *Id*.

The matter was appealed to the United States Supreme Court which held that DNA identification of arrestees charged with serious offenses is a reasonable search that can be performed without a warrant pursuant to a routine police booking procedure. *King*, 133 S. Ct. at 1980. The Supreme Court's reasoning is instructive to the case at hand. Under the Maryland DNA Collection Act, police are authorized, as part of a routine booking procedure, to collect DNA samples from individuals charged with crimes of violence, attempts to commit crimes of violence, burglary, and attempted burglary. *Id*. at 1967. Under that statutory scheme, "all arrestees charged with serious crimes must furnish the sample on a buccal swab applied, as noted, to the inside of the cheeks. The arrestee is already in valid police custody for a serious offense supported by probable cause." *Id*. at 1970. Important to the finding of reasonableness, the statutory scheme deprives individual officers of discretion as to who to search. *Id*.

The Supreme Court found that the statutory scheme serves the legitimate government interest of identifying the individual in custody. *Id*. at 1970-74. DNA identification assists in the proper processing of arrestees by providing a more comprehensive record of the suspect's identity, helping law enforcement officers assess the risks a detainee might pose to facility staff and other detainees, ensuring the availability of the individual at future stages of criminal proceedings, and assisting the court in bail determinations. *Id*. The statutory scheme also serves the interests of justice in that it has the potential of identifying the arrestee as the perpetrator of a crime for which another individual has been wrongfully imprisoned. *Id*. at 1974.

The Supreme Court weighed those interests against the intrusion into an individual's privacy authorized by the statutory scheme. The court found that the swab itself is a minimal intrusion with little to no risk, trauma, or pain. *Id*. at 1979. The manner in which the DNA samples are processed under the statutory scheme only reveals identity information

and not private medical information. *Id.* The Maryland DNA Collection Act contains statutory safeguards to further protect individuals. If no probable cause for the qualifying crime is found at arraignment, the sample is destroyed before it is tested and uploaded to the database. *Id.* at 1967. If the matter proceeds to trial and the individual is not convicted of the crime or if a conviction is reversed or vacated and no new trial is permitted, or an unconditional pardon is granted, then the sample is destroyed. *Id.* The statutory scheme explicitly prohibits the testing of a DNA sample for any purpose other than identification. *Id.*

Like Maryland, the Virgin Islands has enacted a statutory scheme establishing a DNA database. *See* 5 V.I.C. § 4202(a). However, unlike the Maryland DNA Collection Act, the chapter authorizing the Virgin Islands DNA Database and Databank applies only to designated offenders who have been convicted. 5 V.I.C. § 4201(f).[5] Following conviction, designated offenders are required to submit to the taking of DNA samples for identification purposes which are then uploaded into the DNA Database. 5 V.I.C. § 4203(a)-(c). The statutory scheme does not authorize the warrantless collection of DNA from arrestees charged with serious offenses. In fact, the Legislature chose to explicitly state "that any DNA sample obtained directly from a person not otherwise required to submit a DNA sample under this chapter and delivered to the Director for comparison with DNA records in the Database *must be obtained pursuant to a warrant.*" 5 V.I.C. § 4207(a)(3) (emphasis added). The Legislature, while authorizing the warrantless collection of DNA samples from individuals convicted of certain serious offenses, clearly did not intend for warrantless collection of DNA samples to extend beyond "designated offenders".

In summation, the procedure addressed in *King* is: (1) authorized by statute; (2) part of a routine booking procedure; (3) applied to individuals charged with crimes of violence, attempted crimes of violence, burglaries, and attempted burglaries; (4) specifically designed to deprive individual officers of discretion as to who to search; (5) limited

---

[5] A "designated offender" is "an individual convicted and sentenced for any felony or violent crime or any misdemeanor sexual offense or attempt or conspiracy to commit any felony or violent crime or any misdemeanor sexual offense under title 14 of the Virgin Islands Code, or any person on parole, probation or supervised release upon a conviction of a designated offense." 5 V.I.C. § 4201(f).

and allowed only for identification purposes; and (6) contains statutory safeguards for arrestees when probable cause is not found at arraignment or a conviction is not obtained and upheld.

In contrast, here: (1) warrantless collection of DNA samples from arrestees is not authorized by statute; (2) the People are seeking to compel a buccal swab several years after arrest rather than as part of a routine booking procedure; (3) the Legislature has explicitly required that DNA samples not taken from designated offenders must have been obtained pursuant to a warrant; (4) the officers involved are exercising discretion in seeking a sample of Turnbull's DNA; and (5) the DNA sample is sought for investigatory purposes rather than to identify an individual in custody. Further, in *King*, after the initial DNA sample linked King to an unsolved rape, officers obtained a search warrant to procure a second DNA sample. *King*, 133 S. Ct. at 1966. Even in *King*, when the taking of the sample was not authorized by statute as part of a routine booking procedure, the police obtained a search warrant with the first sample establishing probable cause for the second sample.

In situations like the one before this Court, when the facts are significantly different from the facts of *King*, courts have found that *King* does not control and that a search warrant supported by probable cause is required to obtain a buccal swab. *See, e.g.*, *Brown v. Conrado*, 2014 U.S. Dist. LEXIS 22488, *7-8 (C.D. Cal. Jan 8, 2014) (opining that *King* is not controlling when DNA swab was not collected as part of a routine booking procedure to comply with state law and when collection was performed to use in the criminal case against the defendant long after he was taken into custody); *see also United States v. Martinez*, 982 F. Supp. 2d 421, 430-31 (E.D. Pa. 2013) (stating that the Government's burden at a suppression hearing was not altered by *King* where a buccal swab was taken on less than probable cause pursuant to an Emergent Order authorizing police to detain defendant to obtain his physical characteristics); *United States v. Calhoun*, 2013 U.S. Dist. LEXIS 103567, *4-5 (D. Az. July 24, 2013) (opining that *King* did not apply when the government requested DNA swabs of defendant eight months after arrest because it was clearly not part of a routine booking procedure to help officers process and identify the defendant in a safe and accurate way). The Court holds that *King* is not the controlling law on this issue and that the People must obtain a search warrant in order to compel an individual to submit saliva samples unless the individual is otherwise

required to do so under the Virgin Islands DNA Database and Databank Act.

## IV. CONCLUSION

For the reasons stated above, the Court finds that the People have failed to establish probable cause necessary for the issuance of a search warrant to compel saliva specimens. The Court also finds that *King* is not applicable to the facts of this case. An appropriate order follows.